Harold E. JOHNSON, Respondent,

v.

E. A. DUENSING, George Duensing, Jr., S. C. Vaughan, J. R. Proctor, R. W. Meyer, and Charles Israel, Appellants,

The Missouri River Sand and Gravel Company, a Corporation, Respondent,

B. D. Trout, R. A. Johnson, Jr., and G. W. Winn, Appellants.

No. 48647.

Supreme Court of Missouri,

En Banc.

Nov. 13, 1961.

L. O. Schaumburg, W. H. Martin, Schaumburg & Martin, Boonville, Mo., Edward T. Matheny, Jr., Caldwell, Eastin, Blackwell & Oliver, Kansas City, Mo., for appellants.

William H. Becker, Columbia, Mo., for respondents.

WESTHUES, Judge.

This suit was filed on November 19, 1956, by plaintiff Harold E. Johnson, as a

minority stockholder of the defendant Missouri River Sand and Gravel Company, a Missouri corporation. An amended petition was filed on April 6, 1957. The petition is in two counts: In count one, plaintiff prayed that a sale of 545 shares of treasury stock be set aside and that the shares be reoffered for sale by the corporation to the highest bidder, or that the shares be offered to the stockholders proportionately at their fair market value. Other relief sought was to have declared void the election of two directors of the corporation on the ground that they were illegally elected. In the second count, plaintiff asked for injunctive relief and for receivership of the corporation. The prayer for injunctive relief for receivership was abandoned during the trial and, as will be noted later in this opinion, the question of the legality of the election of two board members is now moot. The only question now before us is whether the sale of the 545 shares of treasury stock should be set aside.

The original defendants were the Missouri River Sand and Gravel Company, E. A. Duensing, George Duensing, Jr., S. C. Vaughan, J. R. Proctor, R. W. Meyer, and Charles Israel. During the time the suit was pending and before the trial, B. D. Trout, R. A. Johnson, Jr., and G. W. Winn were added as defendants. These defendants, in November, 1956, purchased 1,310 shares of stock which was a majority of all stock.

A trial was had in March, 1958, in the Circuit Court of Cooper County resulting in a decree granting plaintiff the relief sought. All of the named defendants, except the corporation, appealed.

■ The cause was heard on appeal in Division Two of this court where, in our opinion prepared by the Honorable Samuel A. Dew, a Special Commissioner, the decree of the trial court was reversed in part and affirmed in part. The cause was then transferred to the court en banc where it was resubmitted. The court en banc trans-

ferred the case to the Kansas City Court of Appeals on the theory that this court did not have appellate jurisdiction. See 332 S.W.2d 950. The Court of Appeals adopted the opinion written by Judge Dew. See 340 S.W.2d 758. On application of the plaintiff, the cause was ordered transferred to this court. It was submitted on briefs at our September Session, 1961. It may be observed that this court en banc, in the opinion transferring the cause to the Court of Appeals, noted that the opinion adopted in Division Two, which the Court of Appeals also adopted, had failed of adoption by this court en banc. This court was then and is now of the opinion that the evidence justified the trial court in setting aside the sale of all of the treasury stock that had been sold.

■ We do not deem it necessary to make a detailed statement of the evidence, especially that which is not material to the issue before us. A lengthy statement of the evidence and of the history of the defendant corporation may be found in the opinion adopted by the Court of Appeals. We shall set forth only a brief history of the corporation and the evidence that in our opinion supports the trial court's decree. The defendant company was originally incorporated under the laws of New Jersey. In 1930, it was incorporated under the laws of Missouri. Defendants E. A. Duensing, his brother George, and J. R. Proctor and others purchased the stock of the company in 1917. As the name of the company indicates, its business was pumping sand from the Missouri River. Sand was sold and delivered to customers over a wide area in central Missouri. In 1930, the company was incorporated with a capital stock of $40,000 divided into 2,000 shares at $20 par value. The company enjoyed a prosperous business. Over the years, dividends in an amount of about $120,000 had been paid. E. A. Duensing was the president of the company. His brother and J. R. Proctor were members of the board of directors during much of that time. The corporation did repurchase

some of the outstanding stock which at the time of this lawsuit amounted to 545 shares. This is treasury stock and must be treated as such in this case. 18 C.J.S. Corporations §§ 211 and 212, pp. 645, 646.

During the years 1941 to 1954, a number of floods damaged the property to a great extent. There also were a number of years when the water of the Missouri River was very low and this, too, curtailed business. Plaintiff Harold E. Johnson operated a building-supply business and a ready-mix concrete business in Columbia, Missouri. In 1954 or 1955, he had secured a number of contracts for which he needed a large supply of sand. He had in the past purchased sand from the defendant company. It had not always been satisfactory. In 1955, he became interested in acquiring stock in the defendant company so that he could have a voice in the management to the end that he would be able to obtain a good and sufficient supply of sand. In 1955, Johnson wrote to a number of stockholders and by November he had acquired 436 shares at an average price of $36.78 per share. Before purchasing this stock, Johnson had examined the physical property of the defendant company and had made some inquiry as to the value of the stock. In June, 1955, the defendants E. A. Duensing and S. C. Vaughan, president and secretary of the defendant company, wrote Johnson and other stockholders of the general financial condition of the company. It was in the nature of a report to the stockholders. The letter concluded with the following paragraph: "During all these years of operation, there never was a time when any of this stock was for sale and most of the original stock which we sold is still owned by the original purchaser or is now in the hands of the heirs of the original owners, of which we are very proud indeed. Should you at anytime want to dispose of your stock, we hope you will follow the tradition which we have established when we sold this stock and let the Company have the first opportunity to purchase your stock or give us the refusal of

it. We want our stock-holders to feel free at all times to write us for any information regarding the stock which you own."

Mr. E. A. Duensing's testimony at the trial was, in part, as follows:

"Q. Was there any gentlemen's agreement between you with reference to the sale of this stock? A. Yes, there was.

"Q. What was the agreement? A. Well, if any of the stockholders were ready to sell their stock or wanted to sell it, the gentlemen's agreement was it would be sold to the present stockholders."

The flood of 1951 damaged the plant to such an extent that loans were secured in the amount of $47,500 to rebuild the plant and purchase new equipment. By 1955, the loans had been reduced materially. An auditor, after examining the books of the company in 1955, recommended that the treasury stock be sold to obtain working capital. A meeting of the board of directors was held on December 15, 1955. At this time, the board consisted of E. A. Duensing, George Duensing, Jr., J. R. Proctor, and S. C. Vaughan. These four men held 635 shares of stock. At this meeting, it was decided to sell the treasury stock. The stockholders were not notified nor given an opportunity to make a bid. The stock was disposed of by selling to J. R. Proctor 200 shares at $20 per share (payment was made by cancelling a note which Proctor held in the amount of $1,500 and the balance was paid in cash); 100 shares were sold to a friend of the Duensing brothers, Charles Israel, at $20 per share; and 245 shares were transferred and sold to R. W. Meyer at $20 per share. No cash was paid by Meyer. He was an insurance broker at Boonville. The company owed him $8,012.86 for insurance premiums. The company took credit for $4,900. Meyer testified that the balance of his bill was paid by the company in 1957. The result of these sales placed the controlling or majority stock in the hands of

the four men on the board of directors and Meyer and Israel. These parties were then the owners of 1,280 shares of the 2,000 outstanding after the sale of treasury stock.

The annual meeting of the stockholders was held on January 18, 1956. At this meeting, it was announced that a board of four directors for 1956 would be elected. By cumulative vote, E. A. Duensing, George Duensing, Jr., J. R. Proctor, and plaintiff Harold E. Johnson were elected. S. C. Vaughan who had been a member of the board was not reelected. The minutes show "A motion duly made and seconded carried, it was voted to amend the By-Laws and elect two addition Directors." Thereupon, S. C. Vaughan and defendant Meyer to whom some of the treasury stock had been sold were added. This was done over plaintiff's protest. We may note here that evidently Meyer was in full accord with the Duensing-Proctor group as disclosed by his evidence given at the trial. Note his testimony:

"A. Yes, when I was notified of this meeting in Jefferson City at Mr. Fisher's office, I was in a meeting with the other Directors and at that meeting I learned why the meeting was called.

"Q. You mean you had a meeting preceding the meeting, the regular Directors meeting? A. That is right.

"Q. And you all agreed about the position you would take with respect to Mr. Johnson's claims? A. We agreed, yes.

"Q. Then you went into the Directors Meeting and none of you supported Mr. Johnson or took care of any of the actions he requested? A. That is right."

Plaintiff Johnson tried unsuccessfully to have the board of directors rescind the action of selling the treasury stock. He offered to finance the repurchase and place the stock in the name of the corporation to be resold to the highest bidder. The Duensing-Proctor group of stockholders adopted a resolution confirming the sale of the treasury stock. In his efforts to settle the question, plaintiff attempted in various ways to come to an agreement with the opposing group without success. The dispute was that plaintiff claimed the treasury stock was worth far more than $20 per share.

Let us now examine the evidence as to the value of the stock at the time the treasury stock was sold. An audit dated November 30, 1955, which was a short time before the 545 shares were sold, revealed a surplus of $45,736.80. The books at that time showed capital stock amounting to $40,000 which represented 2,000 shares at $20 par value. With $10,900 deducted as the value of the 545 shares of treasury stock, the audit showed $29,100 as the value of the 1,455 shares of stock outstanding. This audit was made and paid for by the corporation. The audit showed the book value of the stock was $90,543.92.

Garth Clinkscales, president of the National Bank of Boonville, testified for the defendants. The corporation had transacted business with this bank for many years. This witness placed the value of the stock at from $25 to $30 per share.

Plaintiff Harold E. Johnson testified that he made an investigation of the physical property of the company. He stated that he found the assets were worth more than the value shown by the books of the company. Note his evidence:

"A. I took and reviewed the assets of the company and I find that some of the assets were high and some were low and I come up with a figure of $20,000, and—

"Q. Above the book value? Yes.

"Q. All right. Take the buildings: how did you find the buildings of the corporation to have been handled? A. The buildings were depreciated and

shown on the books as zero. I put those back at $5,000.00.

\* \* \* \* \* \*

"Mr. Becker: \* \* \* Tell what else you found, Mr. Johnson?

"A. I found that the land was under-valued by $10,000 and I found that the boats were under valued by $15,000.

"The Court: What?

"A. The boats and dredges.

"Mr. Becker: And was there anything else overvalued?

"A. And the machinery was $10,000 overvalued.

\* \* \* \* \* \*

"Q. What figure did you arrive as to the book value of the net assets before deducting capital stock liability? A. $94,836.80."

In November, 1956, B. D. Trout with full knowledge of the threatened litigation purchased 1,310 shares of the defendant company's stock, which included the 545 shares involved in this case, for a price of $25 per share. These 545 shares were, at Trout's request, issued as follows: 217 shares to Trout; 164 shares to R. A. Johnson, Jr.; and 164 to Dr. G. W. Winn. All of the then officers of the company resigned. B. D. Trout, R. A. Johnson, Jr., G. W. Winn, and plaintiff Harold E. Johnson were elected as members of the board of directors. That action rendered moot the question of the legality of the two additional directors elected at the January, 1956, meeting of the stockholders.

The members of the old board of directors disputed the fact that the stock was worth more than $20 per share. Aside from that evidence, which consisted mostly of opinions, the record is barren of any substantial evidence to show that the stock was not worth substantially more than $20 per share. True, there were losses caused by floods and dry seasons which to some extent were unusual. However, the report of the audit included all of these conditions and the losses and expense incident thereto.

The trial court was in a much better position than an appellate court to weigh the evidence and to make true measurement of the various transactions and manipulations. Take, for example, the sale of the treasury stock: One of the purposes was, of course, to provide working capital. However, there is no escape from the fact, as we infer from the evidence, that the sale was made to three selected persons so the Duensing-Proctor group would have a majority of the stock. Meyer's evidence referred to supra leaves no other inference to be drawn. In such circumstances, the trial court was justified in finding that the sale of the treasury stock by the directors "constituted a breach by the directors of their fiduciary duties." By the opinion of the Court of Appeals, the judgment of the trial court, setting aside the sale of stock to Proctor, was affirmed, but the judgment as to setting aside the sale to Meyer and to Israel was reversed. It is urged that the sale to Meyer and Israel should not be set aside because they were not officers, directors, or even stockholders of the corporation before they purchased the stock in question. The evidence of Meyer referred to supra and the subsequent events justified a finding that the stock was sold to them with their full knowledge of the controversy then brewing and that they purchased the stock with the idea that they would aid the Duensing-Proctor group in controlling the corporation. They are not now entitled to special consideration. They purchased the stock for less than its value. They sold this stock at a profit. The decree of the trial court provided for reimbursement to B. D. Trout, R. A. Johnson, Jr., and G. W. Winn, the present holders of the stock, in the sum of $20 per share, the amount paid by Meyer and Israel. Appellants say that there was never any issue in this case involving manipulation of control by acquiring a majority of the stock. That fact, however, may be con-

sidered in determining whether the members of the board were guilty of bad faith in selling the treasury stock.

There is little dispute about the law applicable to the facts as outlined supra. In this case, the board of directors did not make any effort to sell the treasury stock at a price in excess of the par value. The evidence justified a finding that a substantially better price could easily have been obtained. The board being in the position of trustee for the stockholders was in duty bound to act in the best interest of the corporation and the stockholders. See 19 C.J.S. Corporations § 761, p. 103, and cases cited under Note 46. In Hyde Park Amusement Co. v. Mogler, 358 Mo. 336, 214 S.W. 2d 541, 1. c. 543(1), this court said: "The officers and directors of a corporation occupy a fiduciary relation to the corporation and to the stockholders; their position is one of trust and they are bound to act with fidelity and subordinate their personal interest to the interest of the corporation should there be a conflict."

Defendants, in their brief, state that "Assuming that rescission was proper, the trial court abused its discretion and powers, and invaded the prerogatives of the corporation's directors, in ordering the subsequent resale of the stock, and in further prescribing the condition, time, terms and manner of such resale, and the disposition of the proceeds thereof."

The trial court, in its judgment, made the following orders:

"(8) That the plaintiff have and recover of and from the corporation the sum of $2,758.00, and that execution issue therefor.

"(9) That defendants B. D. Trout, R. A. Johnson, Jr., and G. W. Winn be, and they are hereby ordered to surrender to the secretary of said corporation for cancellation Certificates Nos. 105 to 113, both inclusive, for cancellation.

"(10) That the directors and officers of the corporation be, and they are hereby ordered to cause said 545 shares of stock to be sold in one lot by the corporation at its office at public auction sale to the highest bidder for cash on two weeks written notice to all shareholders of record and upon reasonable public newspaper advertisement for the use and benefit of the corporation; and that out of the proceeds of said sale, said corporation repay to B. D. Trout, R. A. Johnson, Jr., and G. W. Winn $20.00 for each share cancelled, and that the remainder of said proceeds be paid into the treasury of said corporation; that said resale be held within thirty (30) days after this judgment and decree becomes final unless the time be extended by order of this Court."

Without commenting on the propriety of the orders as made at the time, which was immediately after the trial, we are of the opinion that due to the long delay on appeal the orders should be amended. That part of the order and judgment rescinding the sale and replacing the stock in the treasury of the corporation must be and is hereby affirmed. Likewise, the order must be affirmed which required reimbursing the present owners of the treasury stock to the extent of $20 per share. However, we do not believe that we are in a position as a court to direct in detail what should be done after the stock has been restored to the treasury of the corporation. We, therefore, leave it to the sound discretion of the board of directors to decide whether to leave the stock in the treasury as treasury stock or to sell the stock. If the board orders the stock to be sold, it shall be done in a manner the board deems best for the benefit of the corporation and the stockholders. However, the sale shall be so had as to obtain the best price. The manner of the sale is to be approved by the judge of the Circuit Court. The time limit for the sale shall be prescribed by the court after consultation with the attorneys represent-

ing the parties herein. That part of the trial court's judgment allowing plaintiff $2,758 for his expenses and attorney's fees incurred in this action is hereby affirmed. This question was considered at length in the opinion of the Court of Appeals and we are satisfied with what was there said.

The judgment of the trial court is hereby modified to the extent above indicated and as modified the judgment of the trial court is hereby affirmed.

It is so ordered.

All concur.