**Leo DREYER, Respondent,**

v.

**Mary C. DREYER, Appellant.**

**No. 45547.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 23, 1983.

Richard Wolff, Clayton, for appellant.

Blair K. Drazic, St. Louis, for respondent.

SMITH, Judge.

Wife appeals from that part of a judgment in a dissolution action designating certain property as marital and from the awards of child support and maintenance and the absence of an award to her of attorney's fees.

The parties were married in 1954 and had four children. Three are emancipated and the fourth was 17 at the time of trial and a senior in high school. Custody of that child was awarded to wife. She received an award of $35 per week child support and $50 per week maintenance. The heart of this appeal is the designation as marital property of some $126,000 in bank accounts held under the name of wife and her mother. In addition the trial court determined that partial interests in parcels of certain real estate titled in the names of husband, wife, and varying relatives of wife were marital property. The marital interest in all this property was awarded to wife. In addition, certain accounts transferred by wife from the names of husband and wife to wife and a son were found to be marital property and were awarded 96% to husband and 4% to wife. If the property awarded to wife was in fact marital property, she received approximately 63% (on the basis of the husband's figures) of the marital property. If it was not marital property, then she received approximately 38% of the marital property.

Wife does not directly challenge the determination that the real estate interests were marital property in her "Points Relied On." She does make such a claim in the argument section of the brief. She makes no attack on the award of the bank accounts in her and her son's names. The main thrust of her argument relates to those accounts held in the name of her mother, Genevieve Nuelle (the Nuelle accounts) and herself.

The issue we must decide is the power of the trial court to pass on the marital status of the property in the absence of joinder of the other named owners of the property. As to the real estate we find no absence of such power; as to the bank accounts we do. In *Ravenscroft v. Ravenscroft*, 585 S.W.2d 270 (Mo.App.1979) [6–8], the court held that where resolution of the rights of third parties to property claimed to be marital was necessary to determine a fair and just distribution of the marital property, those parties become necessary and should be joined. *See* Rule 52.04. The case before us is distinguishable from *Ravenscroft v. Ravenscroft, supra,* and *Alvino v. Alvino,* —— S.W.2d ——, No. 45212 (E.D. Mo.App. Aug. 9, 1983) in that here the trial court did not by its judgment divest any third party of his or her interest in the property. Rather it distributed the interest of the marital estate to the wife leaving intact any rights of the third party to challenge the existence of any marital interest at all or in part. But the thrust of *Ravenscroft* does not make this distinction important. Clearly divestiture of a third party's interest requires joinder of that party. But, *Ravenscroft* also recognizes that determination of a just distribution of the marital property requires that the rights of the marital entity vis-a-vis the rights of third parties be determined in the dissolution action. To do otherwise would promote continuing litigation and create a substantial risk that one of the parties to the decree would incur an "inconsistent obligation" by reason of the claimed interest of the third party. Rule 52.04(a).

It is not required, however, that in every case where there is joint ownership with third parties that joinder of the third party occur. Where the question does not involve the rights of the third party but simply the relationship of the marital partners in the property there is no need for such joinder. As to the real estate here that is the situation. The deeds clearly conveyed the property to the husband, and wife, and a third party. While the wife and her mother testified that they didn't consider that it was intended for husband to have an interest in these parcels nothing was developed to challenge in any way the clear grant of the deeds. There is no indication of fraud, mistake or anything else which would raise a question of the ownership of the property except the wife's desire that it not be considered marital property. The court's determination in no way affected the interest granted by the deeds to the third parties. There was no basis therefore for the trial court to determine that the third named persons in the deeds had any interest ad-

verse to the marital estate. Those persons were not necessary or indispensable parties.

▇▇▇▇ The Nuelle accounts present a different problem. The husband contended that despite the names in which the accounts were carried, the money therein was actually solely owned by the marital estate. The trial court apparently found husband's contention correct for it declared the accounts *in toto* to be marital property. Such a determination is adverse to the interests of Mrs. Nuelle. If erroneous in whole or in part it also casts doubt on the court's division of the marital property for we must presume that the court treated the total distribution decreed as its finding of a "just" division. Under the doctrine espoused in *Ravenscroft, supra,* Mrs. Nuelle should have been joined as a necessary party. In view of the trial court's determination that all of the accounts were entirely marital property, we deem it necessary to reverse and remand. In so doing we will indicate some additional considerations upon remand.

The evidence was sufficient to support the trial court's conclusion that marital property was diverted by the wife into accounts bearing her name and that of her mother or her son.

Husband was employed throughout the marriage as a carpenter. He received approximately $30,000 per year from such employment during the years immediately preceding trial. In addition he did many additional carpentry jobs for himself, relatives and others. The evidence indicates that he worked seven days a week at his trade and more than a regular work day. He was paid for many of these jobs in cash. Until the last three years of the marriage he turned his paycheck and any cash he received over to wife, who managed the financial affairs for the family.[1] Sometime during the last years of the marriage husband overheard his wife say to someone that she was taking money from her husband's paycheck and putting it into an account with her mother and "you don't

just take a whole bunch of money at one time, you just take a little bit of money at a time." At approximately the same time husband found bank books indicating that joint accounts in his and his wife's name had been transferred to wife and the youngest son's name. Wife testified she did this because she felt insecure because husband would go on fishing trips without telling her. She admitted that four out of the five accounts containing her son's name were marital property, but stated the fifth came from money she received from her grandfather after his death. On rebuttal husband produced bank records that one of the two large deposits to that account matched to the penny a withdrawal by the wife from a joint account of husband and wife on the same day. Husband also testified that when he found the bank books he also discovered $1200 in cash concealed in the drawer with the books.

Mrs. Nuelle's testimony that the money in the Nuelle accounts was hers was not totally convincing. The accounts were opened using her daughter's social security number because she could not remember her own. She professed the money was saved throughout her lifetime, but indicated her only income in recent years was from some occasional babysitting. Her husband had been deceased since 1965 and had been a music teacher and organist until he retired in 1950 and he had no pension after his retirement. Many of the questions concerning the accounts were carefully phrased to elicit whether her daughter had given her money to deposit in the accounts. Her negative response to such questions does not establish that the money in the accounts was not deposited directly by the daughter. Wife testified she was not aware of any gifts or inheritances her parents had received. Interest from the accounts was sometimes given by the mother to wife. Mother did not pay taxes on the interest. The trial court was free to discredit the testimony of wife and Mrs. Nuelle that the

---

1. Wife admitted being financial manager for seven years but denied that status during the rest of the marriage. Resolution of this fact dispute is the province of the trial court.

money in the accounts came from Mrs. Nuelle.

In this posture we do not believe it was necessary for the trial court to determine the extent of Mrs. Nuelle's ownership of the Nuelle accounts to make a proper disposition of the marital property of the parties. The admitted diversion of the money to the son's account and the evidence that similar diversion occurred to at least some degree to the Nuelle accounts evidences misconduct by the wife. Such misconduct may be taken into account by the trial court in awarding the marital property. Sec. 452.330 RSMo 1978. Rather than determining that the accounts *in toto* represent marital property, the court, if it found diversion by the wife, could simply have decreed that whatever marital interest exists in the accounts is awarded to the wife. Such an award in no way affects the rights of Mrs. Nuelle and is a recognition that whatever eventual disparity in the award of marital property occurs is due to the misconduct and concealment by the wife. There is nothing unjust in a marital property disposition which imposes the risks of disparity on the party responsible for creating that risk. Such an award would make joinder of Mrs. Nuelle unnecessary for neither her interest in the accounts would be adjudicated nor could it be claimed that the award to the wife as made was unjust.

We do not reach the remaining issues of support, maintenance and attorney's fees as the propriety of those awards is largely determined by the marital property distribution.

Judgment reversed and cause remanded for further proceedings consistent with this opinion.

PUDLOWSKI, P.J., and KELLY, J., concur.