Ramona Lee RAVENSCROFT,
Respondent,

v.

Robert RAVENSCROFT, Appellant.

No. KCD 29634.

Missouri Court of Appeals,
Western District.

July 30, 1979.

Lee M. Nation, Kansas City, for appellant.

Robert C. Paden, Michael W. Manners, Independence, for respondent.

Before SHANGLER, P. J., WASSERSTROM, C. J., and CLARK, J.

CLARK, Judge.

Robert Ravenscroft appeals the decree entered June 1, 1977 dissolving his marriage to Ramona Lee, a union accomplished when both were seventeen years of age. Issues raised concern only those portions of the decree effecting division of marital property.

Appellant contends that the trial court erred in ordering division of real estate and in entering an alternative order for a cash payment by appellant to respondent, and also objects generally to the property division as inequitable and unjust. A minimal recitation of facts, essentially undisputed, will suffice to provide the requisite background.

Robert and Ramona were married July 30, 1968. Later that year, they decided to buy the home at 1022 Woodland, Independence, Missouri but, by reason of a misapprehension as to disability occasioned by their age, they arranged for title to be taken in the names of Robert's parents, Charles and Phyllis Ravenscroft. The down payment was supplied in part from Ramona's savings and in part from a personal loan later repaid. Installment payments on a mortgage loan were thereafter made by Robert and Ramona as were payments for taxes and insurance.

The Woodland residence was the marital home occupied during substantially the entire time the parties lived together and has been the home of Ramona and the children since the date of separation. The record title owners, Charles and Phyllis Ravenscroft, were not parties to the action and did not testify. The evidence, however, raises no suggestion that they contributed any funds toward purchase of the Woodland residence nor that they made any payments for taxes, insurance or repairs. The state of the record title and the existence of a mortgage debt do justify an assumption that Charles and Phyllis Ravenscroft executed the mortgage note and are potentially liable for any deficiency remaining after default and foreclosure. The question of to

what extent the residence purchase was facilitated by obligation and interposition of the senior Ravenscrofts' credit as makers of the mortgage note is undisclosed in this record.

The parties acknowledged at trial that disposition of the Woodland property was the principal subject of dispute. The order of the trial court relative thereto found the Woodland real estate to be marital property and directed appellant "to cause title to said real estate conveyed to Petitioner." Upon failure of appellant to do so, he was directed in the alternative to pay Ramona $10,000.00. Other property dispositions and allowances in the decree are not material to disposition of this appeal and are not recited.

Robert first contends that the trial court had no jurisdiction to make any disposition of the Woodland residence because the status of record title in Robert's parents precluded designation of the real estate as marital property. Despite the uncontroverted evidence that Robert and Ramona made the down payment and the monthly mortgage payments from their own resources and that no contribution toward acquisition or maintenance of the home was shown to have been furnished by the record title holders, Robert asserts that he, and presumably Ramona, never had any legal or equitable interest in the property. From this he argues that the residence was not subject to disposition by the court as marital property and cites *Cain v. Cain*, 536 S.W.2d 866 (Mo.App.1976).

Reliance by appellant on the *Cain* case is misplaced. In that case, certain real estate had been acquired by the husband before the marriage and was titled in his name. During the marriage, payments derived in part from marital funds reduced a mortgage debt on the property and increased the equity value. The court held that such payments did not alter the status of the property itself as separate property of the husband because owned prior to the marriage and, hence, not included under Section 452.330–2, RSMo 1978. Specifically not ruled as unnecessary by reason of other

available assets was a decision as to imposition of a charge on the property equal to the enhancement of its value through the contribution of marital funds which reduced the debt.

To the limited extent applicable here, the *Cain* case simply holds that separate property of a spouse owned prior to the marriage does not become marital property merely because a mortgage debt encumbering the property is reduced by application of funds which themselves constitute marital property. Even in such circumstances, however, a charge may be imposed on the separate property to the extent that separate funds of the other spouse or marital funds are expended to reduce the debt or enhance the value of the asset in question. See *Gapsch v. Gapsch*, 277 P.2d 278 (Idaho 1954) annotated at 54 A.L.R.2d 416. In the present case, the Woodland property was purchased during the marriage and, if there be any interest therein owned by Robert and Ramona, such is necessarily marital property by the direction of the statute. Section 452.330–2, RSMo 1978.

On the uncontroverted facts demonstrating that Robert and Ramona supplied the funds to purchase the Woodland property and currently retire the mortgage debt, it is fatuous to contend that they never had any legal or equitable interest in the property. Appropriate to this aspect of the case is the following analysis of the subject in *Hergenreter v. Sommers*, 535 S.W.2d 513 l. c. 518–519 (Mo.App.1976):

"Missouri follows the general rule that where one pays the purchase price for land with legal title taken in another, a presumption arises that the latter holds the property under a resulting trust for the payor. *Davis v. Roberts*, supra [365 Mo. 1195, 295 S.W.2d 152]; *Carr v. Carroll*, supra [178 S.W.2d 435 (Mo.1944)]; *Ferguson v. Stokes*, 269 S.W.2d 655 (Mo. 1954); *Parker v. Blakeley*, 338 Mo. 1189, 93 S.W.2d 981 (1936); Scott, supra, § 440. This theory is founded on an assumption that one who provides purchase money intends to receive the benefit of the purchase and the law will imply that inten-

tion in absence of rebutting facts and circumstances. 2 Bogert, supra, § 454. Application of the rule is peculiarly appropriate where a child furnishes the purchase money and for reasons of convenience, minority, or otherwise, title is taken in his parents. *Adams v. Adams*, 348 Mo. 1041, 156 S.W.2d 610, 614–615 (1941). In such circumstances, the presumption is that of a resulting trust in favor of the child as opposed to a presumption of gift or advancement. *Padgett v. Osborne*, supra [359 Mo. 209], 221 S.W.2d [210] l. c. 212; *Davis v. Roberts*, supra, 295 S.W.2d l. c. 156."

The trial court here found, and the evidence countenances no other result, that appellant's parents held title to the Woodland property as trustees for the benefit of Robert and Ramona as owners of the equitable title. Such equitable interest has previously been held to constitute "property" within the scope of the term as employed in Section 452.330–1 which provides, in part: "In a proceeding for * * * dissolution of the marriage * * * the court * * shall divide the marital property in such proportions as the court deems just * *." *Claunch v. Claunch*, 525 S.W.2d 788 (Mo. App.1975).

It was therefore obligatory in this case for the trial court to make disposition of the equitable interest of the parties in the Woodland home as marital property. In so doing, the court assigned the full equity interest to Ramona and, as previously noted, directed Robert to arrange for conveyance to Ramona of the legal title. Upon his failure to do so, he was ordered to pay Ramona $10,000.00. While this decree is an innovative approach to the problem presented the orders quoted did not result in a valid, enforceable judgment.

Nothing in the evidence warrants a conclusion that Robert has the actual or practical ability to procure and deliver the deed in compliance with the order. At best there is no more than some inference by reason of the family relationship that Robert could prevail upon his parents to execute a deed which they are otherwise under no present obligation to sign. The situation is distinguishable from those cases in which a party may have the ability to comply (as, for example, to execute a conveyance of real estate outside the court's jurisdiction) and may, by the remedy for contempt, be coerced to perform. No such vehicle is available here.

Upon failure of Robert to obtain the deed, this decree would not support execution or any other process available to Ramona for enlisting the court's aid in procuring a deed. Concurrently, however, the availability to Ramona of execution on the alternate judgment for $10,000.00 is uncertain because conditioned on a prior event, the failure of Robert to cause title to be conveyed. Further uncertainty is added by reason of the absence of any time limit within which Robert may avoid liability for the cash payment by obtaining the deed.

■ An essential requirement of a judgment is that it be sufficiently certain in its terms to be susceptible of enforcement in the manner provided by law. To comply with this requirement, the judgment must adjudicate the controversy to a conclusion which permits issuance and processing of an execution without external proof or another hearing. *Brolinson v. Brolinson*, 564 S.W.2d 911 (Mo.App.1978); *Bishop v. Bishop*, 151 S.W.2d 553 (Mo.App.1941).

■ In the subject case, future enforcement of the judgment is dependent on subsequent inquiry dehors the record as to whether or not Robert has caused title to be conveyed and, if not, whether sufficient time has elapsed so that failure to do so obligates him to payment of the sum as contemplated by the alternative judgment. Execution on the cash award of the judgment would require another hearing. The judgment is therefore not sufficiently definite to be capable of enforcement and fails on that ground. *Sunderwirth v. Williams*, 553 S.W.2d 889 (Mo.App.1977).

As a consequence of the foregoing deficiency in the judgment entry, the marital assets represented by the equitable title of the parties in the Woodland property re-

main undivided and undisposed. Where full disposition of marital property is not accomplished, the trial court has not exhausted its jurisdiction and no final appealable judgment results. *Anspach v. Anspach*, 557 S.W.2d 3 (Mo.App.1977). The cause must therefore be remanded for further proceedings.

Upon remand, the trial court will again confront the impediment generated by record title to the Woodland property being lodged in third parties, Charles and Phyllis Ravenscroft. Comment as to appropriate means designed to resolve the dilemma is therefore indicated.

In a marriage dissolution action, the trial court is expressly directed by the statute, Section 452.330–1, to divide the marital property. Unless and until all marital property has been identified, evaluated and divided, the trial court cannot conclude the proceeding in a final judgment. *Anspach v. Anspach, supra.* Thus, the trial court here must effectively dispose of the Woodland residence consistent with the purpose of the Dissolution of Marriage Act, that is, to minimize necessity for recourse by the parties to subsequent litigation and to accomplish in the judgment a complete severance of unity of possession and title to property between the spouses. *Corder v. Corder*, 546 S.W.2d 798 (Mo.App.1977).

Absent jurisdiction over Charles and Phyllis Ravenscroft as record title owners, however, no judgment in this case can finally settle title to the Woodland property. Additionally, any judgment which fails to bind these additional parties cannot foreclose the prospect that they may in the future assert and establish a claim to the property reducing or eliminating values used in the dissolution case to balance marital property distribution. Ownership by outside parties of an interest in marital property therefore directly affects the function of the trial court in deciding the issue of just division of marital assets and in settling titles.

The prevailing view in numerous jurisdictions now holds that although the spouses are ordinarily the only proper parties to divorce litigation, joinder or intervention of third parties is permissible and necessary where such third parties hold or claim some interest in property involved in the proceedings. Divorce-Third Parties' Claims 63 A.L.R.3d 373 1. c. 378. The rationale supporting this authority rests on the inability of the divorce court to make an equitable division of the property if all claims of interest owners are not simultaneously adjudicated and the consequent multiplicity of suits or circuity of actions if third parties are left subsequently to litigate their claims with the divorced spouses.

Although third-party claims may affect disposition in a divorce action of tangible and intangible assets, the title characteristics of real estate in particular more forcefully militate in favor of joinder of third-party claimants. Thus, in the case of *In Re Marriage of Davis*, 68 Cal.App.3d 294, 137 Cal.Rptr. 265 (1977), it was held that the divorce court (a court of limited jurisdiction in California) properly acquired jurisdiction over parents of both spouses to adjudicate the spouses' claims that marital real estate was titled in the names of the parents "for convenience only."

In commenting on the California Civil Code, § 4800, which obligates the court in a dissolution proceeding to divide the community property, the court stated:

"Clearly where it is contended that a third person holds title to community property for convenience only without any valid interest therein, the court could not make an appropriate division of community property and properly discharge its statutory duty without first determining the question of whether or not the community property includes the property to which title is being held by a third person. So long as the property and the persons claiming title thereto were within the territorial jurisdiction of the court, as is true in the case at bar, the question is not a question of jurisdiction, but a question of due process."

In *Breidenthal v. Breidenthal*, 182 Kan. 23, 318 P.2d 981 (1957), the wife alleged in a

divorce action that her husband had collusively transferred property to relatives participating in a family partnership and that the purpose of the transfer was to defeat the wife's marital rights. The court held that the relatives should be joined as necessary parties to permit the court to identify and evaluate the property in question and assess appropriate allowances for the wife.

In *Wright v. Wright,* 199 Okl. 291, 185 P.2d 915 (1947), a third party claiming an interest in property alleged to belong to either spouse was properly added as a party to the divorce action for determination of the property rights of the principal parties. Other cases in which joinder of third parties in divorce cases was approved include *Picchi v. Picchi,* 100 So.2d 627 (Fla.1958), joint interest in property claimed by husband, wife and third party; *Davis v. Davis,* 261 Iowa 992, 156 N.W.2d 870 (1968), interest of third party adversely affected by divorce decree; *Baker v. Baker,* 6 Ill.App.2d 557, 128 N.E.2d 616 (1955), expedite and minimize extent of litigation; *Roberts v. Roberts,* 226 Ga. 203, 173 S.E.2d 675 (1970), joinder of husband's father to adjudicate claim of fraudulent conveyance; *Re Marriage of Holemar,* 27 Or.App. 613, 557 P.2d 38 (Or.1976), joinder of daughter to whom marital property had allegedly been conveyed.

While some states, notably Michigan and Wisconsin, limit third-party joinder in divorce cases to particular circumstances of conspiracy and fraud practiced on the wife, the more generally accepted rule requires joinder as an incident to the property disposition aspect of divorce decrees. The salutory effect of reducing or eliminating future litigation as well as the necessity for ascertainment and evaluation of property interests to be divided are most frequently cited as the basis for extending the scope of the divorce case beyond the two original, principal parties.

■ The present Missouri statute which requires division by the court of marital assets has expanded the dissolution case to include all proceedings necessary to settle title and ownership of real and personal property constituting or claimed to be marital property or separate property. As to the former, the court must divide the property, and as to the latter, the court must set the property apart to the appropriate spouse. Where, as here, a record interest or a claim of interest by a third party attaches to the property with which the court's order in the dissolution case must deal, and where the interest is such that the court's judgment either will be ineffective to conclude that interest without adjudicating the third-party claim or would adversely affect the rights of the third party, the necessity for joinder is apparent in accord with the cases above cited.

■ Rule 52.04(a) anticipates joinder of third parties under the circumstances described. By application of procedures under the rule, either spouse may move to add the third party or, failing action by the parties, the court may determine that the third party is indispensable and that the case may not proceed. Assumed as conditions to joinder of additional parties to the dissolution action are personal or subject matter jurisdiction, both of which exist in the subject case, requiring that Charles and Phyllis Ravenscroft be joined in this action for conclusive adjudication of all claims to the Woodland property. To that end, after notice, the third parties are entitled to be heard on their claim, but with their participation in the case limited to that subject. The judgment which follows will then finally decree ownership in the property as the parties' interests may be found.

■ Appellant's final sub-point of alleged error, stated in its entirety, reads: "Said decree was an inequitable and unjust division of property." The point violates Rule 84.04(d) because it fails to state wherein and why the division of property is claimed to be erroneous. The point fails to preserve anything for review. *Oasis Car Wash, Inc. v. First North County Bank,* 558 S.W.2d 683 (Mo.App.1977).

Also requiring disposition in this case is an abortive attempt by Robert to appeal an order of unknown content entered by the

trial court September 7, 1977. Such was the subject of a notice of appeal filed October 12, 1977. The notice included no jurisdictional statement as required by Rule 81.08 and the transcript ultimately filed March 15, 1978 reflected only those proceedings in the trial court to June 1, 1977, the date of entry of the judgment originally appealed. Respondent has moved to dismiss the latter appeal and for an award of damages for frivolous appeal. The motions were taken with the case.

Upon the obvious failure of appellant to comply with Rules 81.08, 81.18 and 84.04, the appeal from the order of September 7, 1977 is dismissed. As to respondent's motion for damages under Rule 84.19, however, the record here is insufficient to permit responsible review of the motion on the merits. The parties in their suggestions exchange charges of abuse of process and bad faith but even the content of the order sought to be appealed has not been disclosed. As the test to determine if an appeal is frivolous is consideration of whether the question raised on appeal is at least fairly debatable, *Brooks v. General Motors Assembly Division*, 527 S.W.2d 50 (Mo.App.1975), the absence of any record disclosing what issue originated in the September 7, 1977 order precludes addressing respondent's motion for allowance of damages. Such motion is therefore overruled.

The judgment is affirmed insofar as it grants the order of dissolution and awards custody of the children and awards support and maintenance. The case is remanded for further proceedings consistent with this opinion relative to division of marital property and entry of judgment thereon.

All concur.