Michael J. DALLAS, Respondent,

v.

Geralyn Marie DALLAS, Appellant.

No. 46513.

Missouri Court of Appeals,
Eastern District,
Southern Division.

April 10, 1984.

**536**

Herbert A. Kasten, Ste. Genevieve, for appellant.

Raymond M. Weber, Ste. Genevieve, for respondent.

REINHARD, Judge.

Wife appeals from a decree of dissolution. We find merit to her contention regarding the marital residence and reverse and remand to the trial court for further proceedings.

Husband filed a petition for dissolution of marriage. Wife filed a crossclaim for dissolution naming her husband and his parents as defendants. She alleged that she and her husband had resided in the marital home located at 1280 Market Street, Ste. Genevieve, Missouri. She further alleged that legal title to the real estate was in the name of Harvey J. and Jesse R. Dallas, husband's parents; that the legal title to said real estate was placed in the name of husband's parents because she was a minor.

Parents filed an answer and a counterclaim against the husband and wife. In their counterclaim, they alleged that they owned the real property in question; that husband and wife had entered into an oral lease for these premises; that the rental was agreed by the parties to be equal to the monthly mortgage payments of parents payable to the First Federal Savings and Loan; that husband and wife were in arrears for those payments from and after June, 1978 in the amount of $6,209.25; that they had made other loans to husband and wife in the total amount of $6,274.11, for which they had paid $915.00, leaving a balance of $5,359.11. Parents prayed for judgment against husband and wife in the total amount of $11,568.36.

Wife filed a motion to dismiss the counterclaim alleging *inter alia* (1) that it failed to state a cause of action; (2) that the counterclaim contained two claims that had been improperly united; and (3) the counterclaim could not be properly interposed in a divorce action. The trial court did not rule on her motion.

On the morning of trial, wife objected to proceeding on parents' counterclaim without a ruling on her motion to dismiss. The trial court overruled her objection. After a hearing, the court entered a decree, dissolved the marriage; awarded custody of the three minor children to the wife with rights of reasonable visitation by the husband; awarded wife the furniture, furnishings, appliances, household goods and effects in the marital residence and personal effects in her possession. The court awarded husband two cars, life insurance, personal effects in his possession; ordered husband to assume all indebtedness with regard to two vehicles; ordered husband to pay wife the sum of $30.00 per week, per child, for child support; and to pay wife's attorneys the sum of $750.00 for attorney's fees. The court found a marital debt to husband's parents in the amount of $5,339.11 and ordered that it be divided between the parties equally. The court specifically found that husband and wife had no interest in the marital home.

Wife's principal point on appeal is that the court erred in finding that neither she nor her husband had any interest in the marital home.

Wife testified that in April, 1972, she and her husband had been dating for 3 years. At that time she was pregnant with his child and they had determined to be married in September. In anticipation of their pending marriage they were contemplating purchasing a trailer in which to live. However, husband's father recommended that they buy a house instead because it would appreciate in value, whereas a trailer would depreciate. According to wife, husband's father found a house for sale at 1280 Market Street (two blocks from his residence). Wife's parents looked at it and everyone involved thought it was a good house.

According to wife, the agreement was that she would pay $500.00 down on the purchase price of $9,500.00, pay the closing costs, pay the installment payments until they got married in September, at which time she and her husband would make the payments. Parents were to be co-signers [1]

---

1. Wife's testimony showed considerable confusion over the distinction between "co-signing" and "title."

along with herself because she and her husband did not have enough collateral.

The undisputed evidence was that wife did make the down payment of $500.00 and paid the closing costs. Parents signed the note and deed of trust, put up some additional collateral and took title in their names alone. The payment book was in the names of husband and wife. Wife made all installment payments (which included taxes and insurance) until the marriage in September.

Husband and wife thereafter made the payments until October, 1976, at which time, two bedrooms were added and an additional $2,913.33 was borrowed from the bank. The loan was refinanced with husband's parents still on the note and deed of trust. The interest rate was increased and the term increased from twelve to fifteen years. Husband and wife made these increased payments until October, 1978. From that date until the date of trial in June, 1982, the parents made the payments. The parties separated in 1980. Wife was still living in the house at the time of trial and stated she was willing to make the payments on the house.

In August, 1981, parents purchased a tavern which they financed in part by a second deed of trust on the Market Street house. Neither the amount of the note nor the mortgagee were identified.

According to husband's father, at the time of the purchase of the house, it was agreed that if husband and wife kept up the payments, the house was theirs. He testified that he signed the note and deed of trust and pledged the additional security needed because husband and wife did not have enough collateral. He acknowledged that wife made the down payment and that husband and wife made all payments on the house until October, 1978. Up until that time, father further acknowledged that husband and wife "were doing everything as if they owned the house, other than it was titled in their name." According to father, husband and wife had paid $8,420.00 to the bank and parents had paid $6,209.00.

Husband testified that his parents owned the house and he and his wife paid "rent" to the First Federal Savings and Loan in the exact amount of the mortgage. His parents purchased the house in April, 1972, in contemplation of his marriage to wife. They paid no rent to husband's parents. He acknowledged that his wife had paid the down payment. His parents took title, put up the additional collateral, and signed the note and deed of trust because, "we had no collateral." At that time, they had an oral agreement with parents that they would take title when the house was paid off. It was their intent to make "payment directly to the bank."

Husband testified that prior to their separation, he had an affair with another woman with whom he was living at the time of trial and they had a five month old child.

Parents reported no rental income from the property on their tax return. Husband and wife deducted the interest paid the bank on their tax returns from 1972 to 1978. Parents started deducting the interest on their tax returns when they commenced making the monthly payments in 1978.

On appeal, wife contends husband's parents held the property in question under a resulting trust for her or her and her husband. In Missouri, one seeking to establish a resulting trust in real estate has the burden of proving it. The proof required must be so clear and convincing as to exclude all doubt from the mind of the court. *Merideth v. Merideth*, 549 S.W.2d 609, 611–12 (Mo.App.1977). Moreover, we are mindful that in our review of the trial court's judgment, it must be affirmed unless we find no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In this

court-tried case we must also give due regard to the trial court's opportunity to have judged the credibility of the witnesses. Rule 73.01(c)(2).

A resulting trust is implied by law from the conduct and acts of the parties and the circumstances and facts as they existed at and attendant to the transaction out of which the trust arose. It is necessary and essential that the money or other consideration furnished for the conveyance shall have been, in part at least, the property of the person who claims to be a beneficiary of a resulting trust. *Fulton v. Fulton*, 528 S.W.2d 146, 153 (Mo.App. 1975).

Missouri follows the general rule that where one pays the purchase price for land with legal title taken in another, a presumption arises that the latter holds the property under a resulting trust for the payor. *Hergenreter v. Sommers*, 535 S.W.2d 513, 518–19 (Mo.App.1975). This theory is founded on an assumption that one who provides purchase money intends to receive the benefit of the purchase and the law will imply that intention in absence of rebutting facts and circumstances. *Ravenscroft v. Ravenscroft*, 585 S.W.2d 270, 272–73 (Mo.App.1979); 2 Bogert, *Trusts*, § 454. Application of the rule is peculiarly appropriate where a child furnishes the purchase money and for reasons of convenience, minority, or otherwise, title is taken in his parents. *Adams v. Adams*, 156 S.W.2d 610, 614–15 (Mo.1941). In such circumstances, the presumption is that of a resulting trust in favor of the child as opposed to a presumption of gift or advancement. *Padgett v. Osborne*, 221 S.W.2d 210, 212 (Mo.1949).

A resulting trust must arise, if at all, at the instant the deed is taken. Unless the transaction is such that the moment the title passes the trust results from the transaction itself, then no trust results. It cannot be created by subsequent occurrences. *Dougherty v. Duckworth*, 388 S.W.2d 870, 874 (Mo.1965).

Furthermore, if as a part of the purchase price a note is given by the purchaser at the time the deed is passed, and the resulting trust claimant thereafter makes payments on said note, a resulting trust arises only if at the time the note was given there was an understanding that the claimant should pay it. *Adams v. Adams*, 156 S.W.2d 610, 616 (Mo.1941). *See Dougherty v. Duckworth*, 388 S.W.2d 870, 875 (Mo.1965); *MacNeil v. MacNeil*, 312 Mass. 183, 43 N.E.2d 667 (1942).

Wife principally relies on *Ravenscroft v. Ravenscroft*, 585 S.W.2d 270 (Mo.App. 1979), in support of her contention that she established a resulting trust. In *Ravenscroft*, a dissolution proceeding, wife supplied the down payment for a house. Title was taken in her parents' name, because of husband's and wife's minority. Parents executed the mortgage and deed of trust, but were not parties to the action. At the time of the dissolution proceedings, the installment payments had all been paid by husband and wife, as well as the insurance and taxes on the real estate. The trial court found there was a resulting trust in favor of husband and wife. On appeal, the court held that based upon the facts and circumstances "the evidence countenances no other result, [than] that ... parents held title to the ... property as trustees for the benefit of [husband and wife] as owners of the equitable title." 585 S.W.2d at 273. The court remanded the case to the trial court to allow parents to be made parties to the action and for a determination of their claim or interest, if any, to the property.

In the case at bar, we acknowledge the trial court was under no obligation to accept wife's testimony, even those portions that were uncontradicted. Nonetheless, the evidence conclusively established that in April, 1972, in anticipation of the couple's impending marriage, the house on Market Street was purchased for their marital residence. Wife has resided continuously in the house. Wife paid the down payment and closing costs and the couple were to make the mortgage payments directly to the bank. Indeed, the payment

book was in their names. Parents signed the note and deed of trust and took title in their names because of the financial condition of the couple. For the next six and one half years, the couple made all payments in connection with the house. Under these circumstances, a presumption arose of a resulting trust in favor of husband and wife as opposed to a presumption of a gift or advancement. *Ravenscroft v. Ravenscroft*, 585 S.W.2d 270, 273 (Mo.App.1978).

It then became parents' duty to present evidence rebutting that presumption. In their counterclaim, parents asserted husband and wife rented the house. Husband's mother did not testify. Our examination of father's testimony provides no support for this claim. The only evidence in the record that this was a rental arrangement was son's testimony that they "rented" the house. However, a review of the entire record establishes that the conduct of the parties was wholly inconsistent with a rental agreement. Besides many of the facts noted above, husband and wife deducted the interest paid the bank from their income tax return. Parents reported no rental income on their tax return, and took no interest deduction until they commenced making the monthly mortgage payments in 1978. *See Davis v. Roberts*, 295 S.W.2d 152 (Mo. banc 1956) (income tax treatment of property).

There was no evidence adduced that the payments made by husband and wife were intended as a gift or as a loan to parents. Indeed the course of the parties' conduct was one of husband and wife continuously borrowing money from parents.

■ Husband and parents contend that no resulting trust could be established because the parties were motivated by husband's and wife's financial condition. We agree that, in essence, parents lent their credit to the couple. However, this is not an impediment to imposition of a resulting trust. *See Adams v. Adams*, 156 S.W.2d 610, 615 (Mo.1941); *Carrol v. Markey*, 321 Mass. 87, 71 N.E.2d 756 (1947). Husband and parents also contend that there can be no resulting trust because parents have

paid the mortgage since 1978. However, we have concluded that a resulting trust attached at the time the deed passed in 1972 and the couple's interest was not extinguished by parents' actions in paying the mortgage after 1978. Of course, parents are entitled to be repaid for those sums expended. *See Wells v. Wells*, 216 Ga. 384, 116 S.E.2d 586 (1960).

■ We have concluded the wife carried her heavy burden of establishing that she and husband had an equitable interest in the real estate. The trial court's finding to the contrary was against the weight of the evidence. The couple's equitable interest was marital property and required division by the trial court. *Claunch v. Claunch*, 525 S.W.2d 788 (Mo.App.1975).

■ Wife also contends that the trial court erred in rendering a judgment against her on the counterclaim. We have no quarrel with wife's contention that the court had no right to proceed on that portion of the counterclaim alleging debts owed by husband and wife. Wife had filed a motion to dismiss the counterclaim. Wife was not in default. Until that motion was ruled upon and wife given an opportunity to file a reply, the court could not rule on the merits of parents' counterclaim. *See Griffith v. Hammer*, 595 S.W.2d 292 (Mo. App.1979).

■ Neither do we have a quarrel with wife's contention that when third parties are made parties to a dissolution proceeding, their participation is limited to the subject matter of the claim for which they are brought into the action. Here, the subject matter was the marital residence. Parents' claim for money loaned to the couple for car payments, utilities, and other purposes was beyond the subject matter of this suit. *Ravenscroft v. Ravenscroft*, 585 S.W.2d 270, 275 (Mo.App.1979).

■ However, a careful reading of the court's decree reveals that, contrary to wife's contention, no judgment was rendered in favor of the parents and against husband and wife on the counterclaim. In its decree the court only determined that

the debt to the parents was a marital debt and apportioned one-half of that indebtedness to each party. That does not constitute a judgment on which parents may execute.

Wife also contends that the court abused its discretion in awarding only 40% of the attorney's fees she requested. We have examined the record and find no error in this regard.

Judgment affirmed in part; so much of the judgment as pertains to the distribution of the marital property and as to the wife's and husband's interest in the real estate, is remanded for further proceedings. In those proceedings the court, in addition to setting off the marital interest of husband and wife in the property, must consider the parents' rights as to the payments made subsequent to 1978 and the extent to which husband and wife's interest is subject to the note and second deed of trust. For this determination, the lienholder will have to be made a party to the proceeding. *See Ravenscroft v. Ravenscroft*, 585 S.W.2d 270 (Mo.App.1979).

Affirmed in part; reversed and remanded in part to proceed not inconsistent with this opinion.

DOWD, C.J., and CRIST, J., concur.