**Elizabeth L. HAM, Respondent,**

v.

**Frank W. HAM, Frank W. Ham and Le-lah G. Ham, husband and wife, Appellants.**

**No. 36003.**

Missouri Court of Appeals, Western District.

May 28, 1985.

Terrence C. Porter, Columbia, for appellants.

Thomas M. Schneider, Jones, Scott & Schneider, Columbia, for respondent.

Before SOMERVILLE, P.J., and KENNEDY and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

■ The judge found a resulting trust, constructive trust, and an express oral trust in this real estate matter. On appeal only the conclusion of a resulting trust is examined, since if the trial court's judgment is sustainable on any grounds it is to be affirmed. *Drydale v. Kiser,* 413 S.W.2d 506, 507 (Mo.1967); *Connell v. Baker,* 458 S.W.2d 573, 577 (Mo.App.1970). The burden is on the party seeking the establishment of a resulting trust, and proof must be by clear and convincing evidence to exclude all doubt from the mind of the court. *Dallas v. Dallas,* 670 S.W.2d 535, 538 (Mo. App.1984). Review is under *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), and Rule 73.01.

The respondent Elizabeth Ham (Bette) and appellant Frank William Ham (son) were husband and wife in August 1963 when appellant Frank Wilbur Ham (father) and his wife, since deceased, signed a contract to buy the house in question. The price was $16,500, father paid $1000 down plus later another $2300 in September 1963 and for some landscaping fees. The father and his wife signed the note for the balance in the amount of $13,200. The note was for 20 years at 6% interest and payments were approximately $120 per month. Taxes and insurance were made through the bank. The property, a residence, was deeded to father and his spouse on September 5, 1963. In August 1963 the son, Bette and their children moved into the house. The son moved out in February 1976 when he and Bette were divorced. She remains in the house. The son and Bette did not have the money or credit to make such a purchase. The payment book was given to son and Bette and they have made all payments on the note, except for $1000 paid by the father when his son and daughter-in-law were behind. Since February 1976 the son has made the note payment. As of January 1984 there was a loan balance of $9,760 —the house had a market value of $45,000 leaving equity at approximately $35,000.

Bette filed this suit asking a resulting trust be declared for the benefit of her and the son and therefore subject to being set off under the separation agreement and decree of dissolution.

It was stipulated the father and his wife took interest and tax deductions on their income tax returns from 1963 through 1983. They never reported any rental income from the property.

The father testified he thought the house was a good buy and wanted his son and daughter and their family to have a house instead of an apartment, and "they could live there for what the monthly payment was and at such time as they could come up with what I had in the house I would turn it over to them." This statement of agreement was made before closing to his wife and to his son and daughter-in-law. It was corroborated by Bette and the son. Bette said the father agreed to convey title to the couple when he got his money back. There was never any mention made at the time title was taken about a rental agreement. The insurance was in the name of Bette and her husband for the approximately 20 years they made payments. The couple was to and did maintain the house. The father admitted he never expected this arrangement to go on for 20 years, nor the dissolution of marriage, and began changing his mind about the ownership of the house when the divorce occurred. In 1980 the son attempted to re-finance the house.

The judgment divested the father of title and put it in the name of Bette and the son pursuant to the dissolution decree with the father to be reimbursed for all he had paid on the property in the total amount of $4,300. The father was to be held harmless on the note secured by the deed of trust.

■ Of particular note is that the facts here differ from most of the appellate decisions where a resulting trust is found. Many of the Missouri cases relied upon by the parties, involve a child who furnishes

the purchase money, and for reasons of convenience or minority the title is taken in the parents. *E.g. Adams v. Adams*, 348 Mo. 1041, 156 S.W.2d 610, 614–15 (1941), creating a presumption of a purchase money resulting trust in the child as opposed to a gift. *See also Hergenreter v. Sommers*, 535 S.W.2d 513, 515, 519 (Mo.App.1976). Here the parents paid the down payment and were obligated on the note and deed of trust, but the children made all the payments. There was evidence from a parent, a child and a daughter-in-law that the parents would hold the title for the benefit of the son and Bette until the parents' payout was repaid. Since a resulting trust arises by operation of law from the facts surrounding the transaction, the evidence here showed an oral agreement prior to the deed which confirmed the existence of a resulting trust, even though the son and Bette did not make the down payment.

Bette as a *cestui que trust* has shown by clear cogent and convincing evidence an intent to create a trust for the benefit of the son and herself at the time the father acquired legal title. *Adams, supra*, 156 S.W.2d 614. The implication of a resulting trust here is in spite of the presumption the holder of legal title is the owner. *Haas v. Haas*, 669 S.W.2d 592, 595 (Mo.App.1984).

Without the oral agreement *prior* to the passing of title to the father this result might be different. "A resulting trust must arise, if at all, at the instant the deed is taken. Unless the transaction is such that the moment title passes the trust results from the transaction itself, then no trust results. It cannot be created by subsequent occurrences." *Davis v. Roberts*, 365 Mo. 1195, 295 S.W.2d 152, 157 (banc 1956). As the trial court found the father and his wife could advance the down payment and closing costs and take the deed in their name, the son and daughter would make the payments, and at such time as the father's costs were reimbursed the house would be deeded to the son and Bette. The father also told Bette and the son prior to closing that this agreement was being made and the title taken in his name for tax purposes.

■ The son and Bette having equitable title such interest constituted property under the dissolution act, *Ravenscroft v. Ravenscroft*, 585 S.W.2d 270, 273 (Mo.App. 1979).

Although the wife made the down payment in *Dallas, supra*, that case is similar to the one at bar. The court in *Dallas* found a resulting trust noting a resulting trust claimant who makes payments on a note must show those payments were made pursuant to an understanding made at the time the note was given. *Id.* at 539. There was uncontradicted evidence the father made the down payment and signed the note, and took title because of the financial condition of the couple. *Dallas, supra,* at 540. In *Dallas* the couple made payments for six and one half years, and the court relying on *Ravenscroft, supra,* found a presumption in favor of a resulting trust. In this case, as in *Dallas*, the parents attempted to rebut the presumption by claiming this was a "rental" situation. The evidence was not there in *Dallas*, nor here to call this a rental agreement, particularly since the father made no mention of this transaction on his income tax. The father lent his credit to the couple, and as such did not defeat a resulting trust. *Dallas, supra*, at 540.

The judgment of the trial court finding a resulting trust is affirmed.

All concur.