**Linda Ellen MOORE, Appellant–Respondent,**

v.

**Jaclyn Kathleen MOORE and Jaime M. Eichelkraut, Personal Representatives of the Estate of Jackie Ray Moore, Deceased, Respondents–Appellants.**

Nos. WD 64015, WD 64055.

Missouri Court of Appeals, Western District.

March 21, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 2006.

Alvin D. Shapiro, Overland Park, KS, for Appellant/Respondent.

Anita I. Rodarte, Kansas City, for Respondents/Appellants.

Before HARDWICK, C.J., BRECKENRIDGE and SPINDEN, JJ.

PER CURIAM.

This appeal arises from a judgment dissolving the thirty-five year marriage of Linda Moore (Wife) and Jackie Ray Moore[1] (Husband). Both parties contend the circuit court erred in the classification and division of property. We reverse and remand.

### FACTUAL AND PROCEDURAL HISTORY

The parties were married in November 1967. In 1970, Husband began working as a sales engineer for Stahl Specialty Company (SSC), a foundry business of which Wife's father, Glen Stahl, was the co-

---

1. Jackie Ray Moore died during the pendency of this appeal. The court granted a motion allowing Jaclyn Kathleen Moore and Jaime M. Eickhelkraut, the personal representatives of Jackie Ray Moore's estate, to serve as substitute parties for the decedent. The appeal can properly proceed in this manner because only property issues are involved, and the parties are entitled to have pending property issues decided even though one of the parties has died. *Fischer v. Seibel*, 733 S.W.2d 469, 472 (Mo.App.1987).

founder and majority shareholder.[2] Husband was promoted through the management ranks of SSC and became president of the company in 1987.

Wife stayed at home during most of the marriage, raising the parties' four children.[3] After the last child went to college, Wife started working part-time in SSC's accounting department in 1994.

Husband and Wife each began receiving gifts of SSC stock from Wife's parents in 1982. In addition to her stock ownership, Wife was the trustee and sole income beneficiary of two trusts created by her parents: Glen Stahl's "Descendant's Trust" and Blanche Stahl's "Exempt Trust." Both of the trusts held stock ownership in SSC.

Husband and Wife separated in 1998. Wife filed a petition for dissolution of the marriage in June 2000. During that same year, SSC was sold to The Budd Company at a net sales price of $95,408,305. At the time of the sale, Wife individually owned 484 shares of company stock and Husband individually owned 164 shares.[4] Husband agreed to remain as company president after the sale was completed.

On December 12, 2002, after a three-day trial, the circuit court dissolved the marriage by interlocutory judgment and took the property matters under advisement. On April 7, 2004, the court entered an Amended Judgment setting apart the non-marital property and then equally dividing the marital estate valued at $6,913,150.

Wife was awarded marital property valued at $5,038,859, and Husband was awarded $1,874,291 in marital property. Wife was ordered to pay Husband $1,582,284 to equalize the marital property division. Wife appeals the Amended Judgment, and Husband cross-appeals.

## STANDARD OF REVIEW

The judgment in a marital dissolution must be affirmed unless it is unsupported by substantial evidence, against the weight of the evidence, or erroneously declares or applies the law. *McCoy v. McCoy*, 159 S.W.3d 473, 475 (Mo.App.2005). We must defer to the circuit court's determinations of credibility and view the evidence in a light most favorable to the judgment, disregarding all contrary evidence and inferences. *Alongi v. Alongi*, 72 S.W.3d 592, 594 (Mo.App.2002).

## WIFE'S APPEAL

Wife raises two points concerning the circuit court's classification of the increased value of SSC stock individually owned by Wife and Husband. Although the court determined the shares of stock separately gifted to the parties by Wife's parents were non-marital property, the court further found that the net stock value had increased from $6,791 to $15,148 per share during the marriage, while Husband was president of SSC from 1987 through 2000. The court determined that the increased value of Wife's 484 shares

---

2. SSC was incorporated in 1956, at which time Glen Stahl owned fifty-seven percent of the company stock and his brother-in-law, Jacob Cunningham, owned forty-three percent.

3. All of the children were emancipated at the time of the marital dissolution.

4. Wife owned 171 shares of class "A" voting stock and 313 shares of class "B" non-voting stock, for a combined total of 484 shares. Wife's "A" shares represented fifty-seven percent of the outstanding voting stock, thus giving her voting control of SSC. Husband owned 164 shares, or six percent, of the class "B" non-voting stock. At the time of the sale of SSC, all of the company stock was owned by Wife and Husband, their children and close relatives, and their family-related trusts.

was marital property because Husband's labor and low salary as company president directly contributed to the rising stock value. However, the court characterized the increased value of Husband's 164 shares as non-marital because Wife's work in SSC's Accounting Department did not directly contribute to the higher stock value. In Point I of this appeal, Wife contends the court misapplied Section 452.330.2,[5] by classifying all of the increased value of her stock as marital property. In Point II, Wife contends the court inconsistently applied the law by including her stock appreciation in the marital estate while setting apart the increased value of Husband's stock as his separate property.

### Applicable Law

Section 452.330 provides the procedure for disposition of property in a marital dissolution. The circuit court must first set apart each party's non-marital property and then equitably divide the marital property based on relevant factors, including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

§ 452.330.1.

■■■ An equitable division of property is predicated on the proper classification of the parties' property as either non-marital or marital. *Waldon v. Waldon,* 114 S.W.3d 428, 431 (Mo.App.2003). All property acquired by either party during the marriage is presumed to be marital property. § 452.330.3. This presumption can be overcome by a showing that the property was acquired by one party as a gift. § 452.330.2(1). Gifted property is excluded from the marital estate. However, to the extent that marital assets or labor contribute to any increase in the value of the gifted property, that portion of increased value is marital property. § 452.330.2(5). The marital share of the increase in value must be "proportionate" to the amount of marital effort devoted to its acquisition. *Meservey v. Meservey,* 841 S.W.2d 240, 245 (Mo.App.1992).

■■■ The circuit court has broad discretion in classifying and dividing marital property. *McCoy,* 159 S.W.3d at 475. We must presume the court's division of property is correct, and the party challenging the division has the burden of overcoming the presumption. *Bohon v. Bohon,* 102 S.W.3d 107, 109 (Mo.App.2003).

### Increased Value of Wife's SSC Stock

In Point I, Wife argues the court erroneously applied Section 452.330.2(5) by classifying the *entire* increased value of her stock as marital property. Wife contends there was no evidence to show how much of the stock appreciation was due to Husband's corporate leadership at SSC and how much he was undercompensated

---

**5.** All statutory references are to Revised Statutes of Missouri (2000) unless otherwise noted.

by salary. Without specific evidence in this regard, Wife asserts Husband was not entitled to a marital share of the increased stock value because he failed to satisfy the requirements of Section 452.330.2(5).

 To the extent the trial court determined that the increased stock value resulted from Husband's corporate leadership of SSC, we must first consider whether Husband's efforts constituted "marital labor" within the meaning of Section 452.330.2(5). As Stahl's president, Husband had a fiduciary obligation to grow and maintain the company to the maximum of his ability for the stockholders' benefit. The Supreme Court has declared, " 'The officers and directors of a corporation occupy a fiduciary relation to the corporation and to the stockholders; their position is one of trust and they are bound to act with fidelity[.]' " *Johnson v. Duensing*, 351 S.W.2d 27, 32 (Mo. banc 1961) (citation omitted). The Supreme Court has also declared that this fiduciary duty requires corporate directors and officers " 'to exercise the utmost good faith in the discharge of the duties arising out of their trust, and to act for the corporation and its stockholders, giving all the benefit of their best judgment.' " *Bromschwig v. Carthage Marble & White Lime Co.*, 334 Mo. 319, 66 S.W.2d 889, 892 (1933) (quoting *Barker v. Montana Gold, Silver, Platinum & Tellurium Mining Co.*, 35 Mont. 351, 89 P. 66, 70 (1907)). Moreover, officers of a closely-held corporation owe a higher degree of fiduciary duty to shareholders than do their counterparts at public corporations. *Forinash v. Daugherty*, 697 S.W.2d 294, 302–03 (Mo.App.1985). Indeed, Husband acknowledged that he had a fiduciary duty to use his best efforts to grow and to

maintain the company for the stockholders' benefit.[6]

In light of his fiduciary duty as a corporate officer, classifying all of Husband's labor and efforts in growing the company as marital efforts and labor ignores his obligations as Stahl's president. Even had he not been married to Wife, Husband would have been obligated to do all that he did for Stahl's stockholders. The mere coincidence of his marriage to Wife did not convert his obligations to the company's stockholders to marital labor. Accordingly, the trial court erred in determining that Husband's successful corporate leadership transformed the increased value of Wife's SSC stock into marital property.

Regarding the issue of Husband's undercompensation, the trial court made the following findings:

> The philosophy and practice of Glen Stahl and [Husband] was to maintain their compensation at levels that were significantly lower than customary in the industry, in order to help promote more rapid growth of the company. Their efforts were successful; however a result is that [Husband] received inadequate compensation for at least the period of his presidency, from 1987 until the sale of the company. This is clearly evidenced by the more than fifty percent increase in Respondent's salary from July 1998 to July 1999, the period coinciding with the decision … to sell the company. The logical inference [drawn] from these facts is that the large increase was intended to correct for inadequate compensation for prior years in contemplation of the sale of the company.

---

**6.** At trial, Husband testified, "The fiduciary obligation that I had was to grow and main-

tain the company."

■ Because Husband was inadequately compensated during his tenure as Stahl's president, the marital partnership was denied income, which was marital property. *Meservey*, 841 S.W.2d at 246. Husband diverted income from the marriage for the purpose of increasing the value of non-marital assets; hence, marital income became commingled with non-marital assets. *See In re: Marriage of Drikow*, 803 S.W.2d 122, 125 (Mo.App.1990). In dividing the property, therefore, the trial court must consider whether a proportionate share of the increase in value of the non-marital property resulted from Husband's contribution.

■ Marital labor, effort, or services will entitle a spouse to a proportionate share of the increase in value of the other spouse's separate property only when the spouse provides "comprehensive substantiation" of (1) a contribution of substantial services; (2) a direct correlation between those services and the increase in value; (3) the amount of the increase in value; (4) performance of the services during the marriage; and (5) the value of the services, the lack of compensation, or inadequate compensation. *Meservey*, 841 S.W.2d at 245–46. "The law refuses to recognize services as substantial marital effort sufficient to create a marital interest in property in the absence of proof of the value of the services and the connection between their performance and any increased value of the property." *In re: Marriage of Patroske*, 888 S.W.2d 374, 379 (Mo.App.1994).

■ To prevail, a spouse must establish the value of his services, the lack of compensation, or inadequate compensa-

tion. This element requires proof of a dollar amount, because this amount establishes the extent of the spouse's contribution to the increase in value of the non-marital property.[7] Indeed, had Husband been adequately compensated, he would not have been entitled to share in the increased value of Wife's shares even though his labor as the company's president and his corporate leadership directly contributed to the rising stock value and the growth of the company. *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 825–26 (Mo. 1984); *In re: Marriage of Heilman*, 700 S.W.2d 843, 845 (Mo. banc 1985); *Morgan v. Ackerman*, 964 S.W.2d 865, 873 (Mo. App.1998); *Watkins v. Watkins*, 924 S.W.2d 542, 545–46 (Mo.App.1996); *Klaus v. Klaus*, 918 S.W.2d 407, 409 (Mo.App. 1996); *Cuda v. Cuda*, 906 S.W.2d 757, 760 (Mo.App.1995); *Meservey*, 841 S.W.2d at 246; *Milde v. Milde*, 723 S.W.2d 471, 473 (Mo.App.1986). Thus, if Husband cannot share in the increased value of the stock for his labor while being adequately compensated, it is logical to conclude that he can share in the increased stock value while being inadequately compensated but only to the extent that he was inadequately compensated. The value of Husband's services or labor to SSC, therefore, is not measured by the increase in value in the stock price, but by what a company would have paid for his services or labor.

The circuit court received evidence about Husband's salary and evidence concerning the inadequacies of his salary. The circuit court never determined, however, how much Husband should have received in compensation from Stahl, and, in turn, never figured a dollar amount of how

---

7. Husband concedes that value of services requires proof of a dollar amount but asserts that proof of inadequate compensation does not require "a computation or quantification of such undercompensation." We see no log-ical reason to vary the standard between "value of services" and inadequate or lack of compensation. Computing adequate compensation is merely a method to measure the value of services.

much Husband was inadequately paid for his thirteen years as president. Hence, because the circuit court erroneously applied the law, we reverse and remand to the circuit court to properly calculate the amount of Husband's undercompensation and the corresponding increase in value of Wife's SSC stock. In other words, the marital portion of the increased value should constitute the amount that Husband was inadequately paid for his thirteen years as president.

### Increased Value of Husband's Stock

In Point II, Wife contends the trial court inconsistently applied Section 452.330.2(5) and abused its discretion by setting apart the increased value of Husband's stock as his separate property, while including the increased value of Wife's stock in the marital estate. The court reasoned that Wife's short-term employment in SSC's accounting department did not contribute to the appreciation of Husband's stock and, thus, Wife was not entitled to share in the increased value of his non-marital property. We note, however, that Section 452.330.2(5) does not require that a specific spouse must be found to have contributed to the increase in value. *Patroske*, 888 S.W.2d at 379. Under the statute, the evidence need only establish that "marital assets" contributed to the increased value, without regard for which spouse made the contribution. § 452.330.2(5).

Husband concedes the circuit court erred in classifying his stock appreciation as non-marital property. He acknowledges that he was undercompensated by SSC during the marriage and, as such, the increased stock value attributable to his low salary is marital property. We reverse and remand the judgment for further consideration in this regard. The circuit court must determine the marital portion of Husband's SSC stock in the same manner as that set forth above for Wife's stock and then equitably divide the marital estate.

### HUSBAND'S CROSS-APPEAL

Husband brings six points, contending the circuit court erred in awarding Wife the following assets as her separate property: trust income of $1,114,429 that resulted from SSC's excess distributions (Point I); a New York Life insurance policy with cash value of $597,052 (Point III); a Bank of America checking account valued at $12,545 (Point IV); two promissory notes with a total value of $1,000,000 (Point V); and a Lake Winnebago residence and lots appraised at $2,036,831 (Point VI).

Wife initially argues that Husband waived the allegations of error regarding the trust income, the insurance policy, the bank account, and the promissory notes, because he requested the court to award those assets to Wife in the property division. However, the record reflects that Husband actually requested the court to declare those assets as marital property and then award them to Wife as her share of the marital estate. Husband's points on appeal are entirely consistent with his position at trial that the assets should not have been set aside as Wife's separate property. Accordingly, the alleged errors were not waived.

### Wife's Trust Income

In Point I, Husband addresses the trust income Wife received as a result of SSC paying excess distributions to the Descendant's Trust and Exempt Trust. The circuit court and the parties defined "excess distributions" as the portion of the SSC distribution in excess of the amount used to pay the tax liability on company stock owned by the trusts. Husband argues the excess distributions represented

profit from SSC and, thus, any related income passed through to Wife from the trusts, during the marriage, should be classified as a marital asset. He contends the court erroneously applied the law in classifying the trust income as Wife's separate property.

Our court has consistently held that income received during the marriage from a party's separate property is marital property. *Kauffman v. Kauffman*, 101 S.W.3d 35, 45 (Mo.App.2003); *Coleberd v. Coleberd*, 933 S.W.2d 863, 868 (Mo.App.1996). The trust income that Wife received is not exempt from this classification merely because the income was generated from assets held by the Descendant's Trust and the Exempt Trust. Wife is the sole trustee and the sole income beneficiary of both trusts. The trust agreements required quarterly distributions to Wife of all the net income in the trust estates. Additionally, as trustee, Wife was entitled to distribute to herself as much of the trust principal as she deemed necessary for her "maintenance, support, health or education."

The fundamental nature of a trust is a division of title: the trustee holds legal title and the beneficiary holds equitable title. *Mercantile Trust Co., N.A. v. Hardie*, 39 S.W.3d 907, 913 (Mo.App.2001). An equitable interest can vest in the same manner as a legal interest. *Id.* "[L]egal title can vest in the trustee, while simultaneously, the equitable title can vest in the beneficiary." *Id.* Moreover, the beneficiary has a property interest that can be transferred and assigned. *McNeal v. Bonnel*, 412 S.W.2d 167, 170–71 (Mo.1967).

As the sole beneficiary of her parents' trusts, Wife had an equitable property interest in the excess distributions paid to both trusts. The equitable interest of a trust beneficiary is property subject to classification and division in a marital dissolution. *Ham v. Ham*, 691 S.W.2d 944, 946 (Mo.App.1985); *Dallas v. Dallas*, 670 S.W.2d 535, 540 (Mo.App.1984). Accordingly, the circuit court was obligated to consider Wife's equitable interest in determining the marital estate.

The court made a finding that Wife received the excess distributions in the form of trust income. The court further concluded that any income Wife received from the trust was her non-marital property. This ruling appears to conflict with the recent holding in *Moore v. Moore*, 111 S.W.3d 530 (Mo.App.2003), where we reversed a trial court's ruling that a husband's beneficial interest in trust income was his separate property.

In *Moore*, the trust was created five years before the parties' marriage. The husband was the sole beneficiary of the trust; his parents were the trustees. During the parties' marriage, trust income was used to acquire additional property. *Id.* at 532. The income and assets acquired with such trust income were retained within the trust and were not distributed to the husband. *Id.* The husband had the right to terminate the trust at age 35 but did not do so when he reached that age, during the marriage. *Id.*

In analyzing whether the trust assets were marital or non-marital, the *Moore* decision focused on the fundamental nature of the division of equitable and legal title. Although the issue had not been previously addressed in Missouri, *Moore* noted that in other jurisdictions, trust monies are deemed acquired during the marriage if the spouse received the money or had a right to demand receipt of the money before divorce. *Id.* at 534–35. The trust income in *Moore* remained undistributed; however, the assets were deemed marital property because the husband had the constructive right to demand distribu-

tion by virtue of his right to revoke the trust upon attaining age 35. *Id.* at 535.

Here, the basis for finding Wife's trust income to be marital property is even more compelling than in *Moore*. As the sole trustee and sole beneficiary of each trust, Wife held both equitable and legal title. The excess distributions paid to each trust were in turn paid by Wife, as trustee, to herself as beneficiary. Wife, not the Descendant's Trust or the Exempt Trust, reported the income on her tax returns. Wife's receipt of the excess distributions payable from the trust was actual, not constructive. The trust agreements establish that her right to the income from the distributions was vested, absolute, and irrevocable.

In light of our holding in *Moore*, the circuit court erred in classifying Wife's trust income as her non-marital property. As a result of the error, Wife was awarded trust income of $1,114,429 [8] that should have been included in the marital estate. On remand, the circuit court must consider this trust income in dividing the marital property.

### Commingling of Marital and Non–Marital Funds

In Point II, Husband generally challenges the court's finding that Wife's commingling of marital and non-marital funds was incidental and did not operate to convert Wife's separate assets into marital property. He asserts the finding is unsupported by the evidence and misapplied the law, in that Wife failed to rebut, by clear and convincing evidence, the legal presumption that the commingled assets were

part of the marital estate. Husband subsequently applies his argument regarding commingling to the specific assets addressed in Points III through VI: the New York Life insurance policy, the Bank of America checking account, the promissory notes, and the Lake Winnebago residence. We will consider Husband's general commingling arguments in the context of addressing the court's classification of these assets.

### Cash Value of Insurance Policy

In Point III, Husband asserts the court erred in classifying the $597,052 cash value of a New York Life insurance policy as Wife's separate property. Wife purchased the policy in 1992 and paid the annual premiums with funds gifted from her mother. On one occasion, Wife deposited the gifted funds into a bank account jointly titled with Husband and then wrote a check from the account to pay the life insurance premium. Husband contends the gifted funds were transmuted into marital property when they were commingled in the joint bank account; thus, the subsequent premium payment rendered the insurance policy as marital property. Husband also argues that $112,517 of the policy's cash value was derived from dividends earned on the policy during the marriage, thereby making that portion of the asset marital property.

Section 452.330.4 provides that "non-marital property shall not become marital property solely because it may have become commingled with marital property." Once commingling occurs, the

---

8. Wife argues the trust income should not have been considered in the property division because it was spent on the parties' living expenses, their children's educational expenses, and gifts, such that the funds no longer existed at the time of the dissolution trial. Husband points to testimony in the record that allowed the circuit court to trace the trust income to various assets purchased, loans to trust accounts, and gifts to children. Based on this evidence, the court was able to determine that the trust income existed and was accountable as an asset, albeit not in the form originally received by Wife. We must defer to the court's factual determination in this regard, as it is supported by the record.

party claiming separate property has the burden of establishing by clear and convincing evidence that an identifiable portion of the funds can be traced to specific non-marital assets. *In re Marriage of Maninger,* 106 S.W.3d 4, 9–10 (Mo.App. 2003).

Wife met this burden by testifying that she deposited gifted funds from her mother into the parties' joint account and then promptly wrote a check from that account to pay the premium on the life insurance policy. No contrary evidence was presented, and Wife's testimony was sufficient to trace the source of her premium payment to the gifted funds.[9] The circuit court properly concluded that the commingling was incidental and did not result in transmutation of the funds, the subsequent premium payment, nor the cash value of the life insurance policy into marital property.

The court also correctly determined that the dividends included in the cash value of the insurance policy were not marital property. The insurance policy was Wife's separate property and the retained dividends increased the cash value of the property by $112,517. Husband does not assert that marital labor or assets contributed to the increased value of the non-marital assets. Accordingly, pursuant to Section 452.330.2(5), the increased value of Wife's separate property cannot be included in the marital estate. Point III is denied.

### Bank of America Checking Account

■ In Point IV, Husband contends the court erred in classifying Wife's Bank of America checking account no. 0906 as her non-marital property because funds in the account were inextricably commingled. When both marital and non-marital funds are deposited into the same account, or such commingled funds are reinvested in another asset to such an extent that a non-marital portion cannot be identified or traced to separate assets, more than mere commingling occurs and the entire asset is marital.

*Maninger,* 106 S.W.3d at 10.

Wife established the Bank of America checking account in 1994 and titled it in the name of the "Linda Moore Revocable Trust." She deposited her gifted and inherited funds into the account, as well as her paycheck from SSC and her trust income. Substantial interest was earned on the funds in the account during the marriage. The evidence established that non-marital and marital funds were both deposited in the account, and Wife made no effort to trace and identify what portion of the $12,545 balance was her separate property. Wife failed to overcome the presumption that the commingled funds were marital property. Accordingly, the court erred in classifying the account as non-marital. On remand, the entire balance of the Bank of America checking account must be included in the marital estate.

### Promissory Notes

■ In Point V, Husband contends the court erred in classifying two promissory notes, valued at $600,000 and $400,000, as Wife's separate property. Wife obtained the promissory notes when she loaned a total of $1,000,000 to the Exempt Trust and Descendant's Trust on October 1, 2002, to pay taxes due following SSC's stock sale distributions. In making the loans, Wife transferred funds from her Bank of America investment account. Husband asserts the investment account included commingled funds, and that Wife

---

9. *Cf. Montgomery v. Montgomery,* 18 S.W.3d 121, 124–25 (Mo.App.2000) (Husband's self-serving testimony fell short of providing clear and convincing evidence *when weighed against the evidence in opposition* ).

failed to trace the source of the loans to her non-marital funds.

At the dissolution hearing, Wife presented the account statements for the Bank of America investment account from December 31, 1995, through October 31, 2002. The evidence established that Wife deposited inherited and gifted funds into the account and that the account also included accumulated interest and dividends paid during the marriage. The account was valued at $7,212,382 at the time of the dissolution. Based on the evidence presented, the circuit court determined $6,020,320 of the account value was Wife's non-marital property. The court included the balance of $1,192,062 in the marital estate as interest and dividends earned during the marriage.

Husband does not dispute that the seven years of bank records were sufficient to allow the court to determine which portions of the investment account were non-marital and marital.[10] Assuming those classifications were properly made, the court could rely on the same evidence in determining that Wife had sufficient non-marital funds in the account on October 1, 2002, to make the two loans totaling $1,000,000 to the trust. The bank records reflect that Wife deposited more than $16,000,000, from the sale of her SSC stock, into the investment account in 2000. Wife testified that she used the stock sale proceeds to purchase bonds, and when the bonds matured, she used the bond proceeds in her Bank of America investment account to loan money to the trusts. The bank records indicate that Wife had more than $8,000,000 in the account at the time the loan checks (in the amount of $400,000 and $600,000) were written on October 1, 2002. The record supports the court's determination that the loans were made from

Wife's separate assets and, thus, the promissory notes were properly classified as her non-marital property. Point V is denied.

### Lake Winnebago Property

■ In Point VI, Husband contends the circuit court erred in designating the Lake Winnebago real estate, valued at $2,036,851, as Wife's separate property. He argues the real estate was acquired from account funds that were so inextricably commingled as to make it impossible to apportion the marital and non-marital sources of the purchase. We agree.

Wife's bank records reflect that she spent $1,995,780 from her Bank of America checking account to acquire two lots on the lake property and build a home during the period of May 2000 through January 2001. She wrote more than 100 checks related to this project, and the bank records are unclear as to whether she transferred funds from the Bank of America investment account to cover all of these expenses. As discussed with regard to Point IV, Wife made no effort at trial to trace or distinguish which funds in the checking account were her separate property. Accordingly, she failed to overcome the presumption that the account was marital and that the Lake Winnebago property was acquired with marital resources from that account. The court erred in excluding the Lake Winnebago property from the marital estate. On remand, this real estate must be included in the division of the marital property.

### CONCLUSION

The judgment is reversed with regard to the classification and division of property. In all other respects, the judgment is affirmed. The cause is remanded for fur-

---

10. None of Husband's points on appeal challenge the circuit court's apportionment of the Bank of America investment account as part marital and part non-marital property.

ther consideration of the property matters in a manner consistent with this opinion.