OPINION
Appellants, Jean and Michael DeMasi, appeal the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division. Appellants were third-party defendants to the divorce suit between appellee, Angela M. Perich (formerly Perich-Varie), and Mrs. DeMasi's son, Jeffrey M. Varie.
The Varies were married on June 29, 1987 and divorced on June 12, 1997. The current dispute concerns the ownership of property located at 253 Butler Road N.E., in Warren, Ohio. In 1989, the Varies rented a home located next door to 253 Butler Road. Roy Knofsky, the owner of the house at 253 Butler Road at that time, was more than one hundred years old. Because Angela would often check on Mr. Knofsky and do things to help him around his house, his daughter, Ruth K. Jacobs, promised the Varies that she would sell them the house at a discounted price, if they were interested. After Mr. Knofsky died, in 1991, Ms. Jacobs agreed to sell them his house for $33,000, although it had been appraised as high as $45,000. Angela negotiated the purchase but, on December 5, 1991, the DeMasis, not the Varies, signed the purchase agreement and the property was conveyed to them.
The parties stipulated to many matters involved in the divorce. The court held a hearing on the issue of ownership of 253 Butler Road, on February 24, 1997, and continued to March 7, 1997. The following facts were revealed at this hearing.
In 1986, prior to their marriage, the Varies moved to Marco Island, Florida. On July 12, 1987, Jeffrey received a termination of employment buyout from General Motors, in the amount of $35,474.30, from which he received, after taxes, net proceeds of $26,403.58. Despite evidence to the contrary, Jeffrey testified he only received about $17,000 as a result of the buyout and spent it all in Florida for living expenses. On July 22, 1987, Jeffrey and his mother opened an investment account as joint tenants with rights of survivorship at IDS Financial Services (nka American Express Financial Advisers), with an initial balance of $2,500. They also opened a similar account with John Hancock Financial Services, however the date the account was opened and the amount of the initial balance are absent from the record. Mrs. DeMasi testified that she had the accounts for many years and that she had the account in her son's name in the event that she died or went into a nursing home. Jeffrey testified that he knew nothing of the accounts, although he paid taxes on the dividends from the accounts. Both names were on the account statements, which carried Jeffrey's social security number, but notes from the brokers who handled the accounts were only written to him.
On December 2, 1991, Jeffrey and Mrs. DeMasi redeemed shares from both the IDS and John Hancock accounts. A total of $15,444.30 was paid to them jointly as a result. On December 5, 1991, the DeMasis made a $12,000 down payment on the house. On February 7, 1992, the DeMasis executed a fifteen-year note and mortgage for $21,000, the balance due. After the house was purchased, the Varies spent more than $17,000 on repairs. The Varies made all payments for the mortgage, property taxes, and insurance, from the date of purchase until the date Angela filed for divorce. Since that time, Angela has made all payments. Mrs. DeMasi testified that the DeMasis owned the house, and that the payments made by the Varies were for rent. The DeMasis reported the rental income, real estate tax payments, and payments for improvements on their yearly income tax returns. Every year, the amounts reported provided the DeMasis a deduction from taxable income.
Angela testified that the she and Jeffrey were the owners of the house and that, because they could not obtain financing, the DeMasis obtained title to the house and executed the mortgage as a favor. Jeffrey testified that the DeMasis, not he and his wife, owned the house. However, on November 9, 1995, shortly before he went to prison, Jeffrey gave an affidavit to his wife in which he stated that he and she were the equitable owners of the property at 253 Butler Road and that the DeMasis were holding it in a constructive and/or resulting trust. During trial, he testified that he did not know what he was signing when he executed the 1995 affidavit, because he was doing many things at that time in preparation for his imminent incarceration. Angela testified that he had told her he was signing it so that his parents would not try to take their house away. When she filed for bankruptcy, during the divorce proceedings, Angela did not list the property as one of her assets. She testified that she did not list it as an asset because of her lack of understanding of the proceedings.
The court concluded that, although the DeMasis were the legal owners of 253 Butler Road, Jeffrey was the equitable owner. The court reasoned that: because Jeffrey had filed for bankruptcy in 1983, he put the house in the DeMasis' name in order to obtain financing; the money used for the down payment was from the investment accounts, which were Jeffrey's, and a premarital asset; the money, allegedly paid as rent, would be construed as mortgage payments made by the Varies out of marital assets; and, concluded that, after computing the fair market value, the balance due on the mortgage, and the credit due Jeffrey for the down payment paid out of his premarital assets, each Varie had a marital equity in the house of $25,664.60. It later ordered that the DeMasis convey title of 253 Butler Road to Angela and that Angela pay Jeffrey for his equity therein, less child support arrearages.
Appellants appeal from this ruling and raise the following assignments of error:
 "[1.] The trial court erred in ordering appellants to relinquish all right, title and interest in the real property even assuming that the evidence was sufficient to establish a resulting trust since only a proportional interest in the property would have been created by a resulting trust.
 "[2.] The trial court erred in finding that Jeffrey Varie was the equitable owner of the property in absence of competent, credible evidence sufficient to support such a finding under the clear and convincing evidence standard of proof, and the finding was therefore against the manifest weight of the evidence."
We will address the second assignment of error first. In their second assignment of error, appellants assert that the trial court's ruling that Jeffrey was the equitable owner of the property was against the manifest weight of evidence. Appellants claim that the only evidence to support the court's determination that the funds in the investment accounts were from Jeffrey's buyout was testimony by Angela, based solely on what she claimed Jeffrey told her about the source of the funds in the accounts. Jeffrey and Mrs. DeMasi, who both testified that the funds did not come from the buyout, disputed this. They further dispute the admission of the affidavit signed by Jeffrey in which he claimed that the property was being held by the DeMasis as resulting trustees.
"Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,280, 376 N.E.2d 578, at syllabus.
A resulting trust has been defined as one which the court of equity declares to exist where the legal estate in property is transferred or acquired by one under facts and circumstances which indicate that the beneficial interest is not intended to be enjoyed by the holder of the legal title. First Natl. Bank ofCincinnati v. Tenney (1956), 165 Ohio St. 513, 515-516,138 N.E.2d 15. The type of resulting trust in question in the current case is a purchase-money resulting trust, defined by the Restatement of the Law 2d Trusts (1959) 393, Section 440 as originating when a transfer of property is made to one person and the purchase price is paid by another. John Deere Indus. Equip. Co. v. Gentile
(1983), 9 Ohio App.3d 251, 254, 459 N.E.2d 611. If such facts are proven and there is no showing that the person who paid the purchase price intended otherwise, a resulting trust arises in the payor's favor.
Appellants dispute the admission of the affidavit signed by Jeffrey as being self-serving hearsay. At trial, the affidavit in question was introduced during the testimony of Jeffrey Varie as follows:
 Q: "All right. Do you recall — well, first of all, let me ask you: You claim to have any interest in this real estate at 253 Butler Road, NE, Warren, Ohio?
A: "Do I have any interest in it as in?
 Q: "Is it your property that [is] being held in 
your mother and stepfather's name for you?
A: "No.
Q: "It is not; is that correct?
A: "Correct.
 Q: "And do you recall signing an affidavit on November 9th, 1995?
A: "Yes.
 Q: "`I, Jeffrey M. Varie, after being first duly sworn, acknowledge and verify that one real property, known for street numbering purposes as 253 Butler Road, NE, Warren, Ohio, which is titled in the names of `Michael DeMasi and Jean DeMasi,' belongs to my wife, Angela M. Perich-Varie and myself, and Michael DeMasi and Jean DeMasi are holding said property as Constructive and/or Resulting Trustees.' Do you remember that?
A: "* * * Yes, I remember signing a paper."
 This affidavit was not introduced as evidence that the property was being held in a resulting trust, but as a prior inconsistent statement to impeach Jeffrey. Jeffrey had testified that the property was the DeMasis', not the Varies'. Introduction of the affidavit tended to show that it was not always his belief that the property was the DeMasis' and that his testimony was not credible. As appellee further argued in her brief and at oral arguments, the trial court did not rule that the property was owned by both Angela and Jeffrey, as set forth in the affidavit, but that it belonged solely to Jeffrey. Such a ruling indicates that the trial court considered the affidavit for its impeachment value and not as substantive evidence. The trial court did not err by allowing its admission.
Although the trial court never used the actual words clear and convincing evidence, a review of the record supports, by clear and convincing evidence, the trial court's determination that Jeffrey was the beneficial owner of the property. The $12,000 down payment was paid three days after Jeffrey and his mother redeemed more than $15,000 in shares from their joint investment accounts; thus, the court was justified in concluding that the money for the down payment was from the investment accounts. The court was also justified in determining that the money in the investment accounts was Jeffrey's because the accounts were opened soon after Jeffrey received money from the GM buyout, the accounts carried his social security number, and he reported all dividends in his tax returns. Further, the Varies, not the DeMasis, made all mortgage, tax, and insurance payments on the property. The trial court's finding was not against the manifest weight of the evidence. Appellants' second assignment of error is without merit.
In their first assignment of error, appellants assert that the trial court erred by concluding that, even if a resulting trust existed, Jeffrey was the equitable owner of the entire property, rather than just a portion. Appellants argue that Jeffrey paid only $12,000 of the $33,000 for the property, and that they, not the Varies, were legally liable for the remaining $21,000 on the mortgage. Appellants' position is that, under these facts, the court should have ruled that Jeffrey only had a 36% interest in the property, the proportion of the amount he paid to the total purchase price, or that he undertook the obligation to pay the mortgage after the purchase took place and, thus, a resulting trust was not created at the time of the purchase. In support of their position, appellants cite Restatement of the Law 2d Trusts (1959), sections 454 and 457, and a 1956 case from the Supreme Court of Missouri, Davis v. Davis (1956), 365 Mo. 1195,295 S.W.2d 152.
The Davis case, which is not controlling law in Ohio, presents a different fact pattern than the instant case. InDavis, the party seeking to have a resulting trust imposed incurred a personal obligation after the purchase not at the time of purchase, as occurred in the instant case. Furthermore, at least three Missouri cases, since 1956, have held that a resulting trust covered the full title interest to the property when the purported beneficial owner paid the down payment and the subsequent mortgage payments, even when the mortgage note was in someone else's name. See Dallas v. Dallas (Mo.App. 1984),670 S.W.2d 535; Ham v. Ham (Mo.App. 1985), 691 S.W.2d 944; Tomasovicv. Tomasovic (Mo.App. 1992), 845 S.W.2d 661.
The sections of the Restatement cited by appellants are not relevant to the factual scenario presented in the instant case. Section 454 addresses situations where each party agrees to purchase a portion of the property. Section 457 addresses situations where, after a transfer has been made, a party undertakes an obligation to pay the purchase price. The trial court concluded that the full down payment was made by Jeffrey and that all of the subsequent mortgage payments were made by the Varies. No evidence was presented to show that an arrangement existed between Jeffrey and the DeMasis to purchase a portion of the property or that the Varies undertook an obligation to pay the purchase price after the transfer had been made. Therefore, Section 454 and 457 are inapplicable to this case.
More relevant to this case is Restatement of the Law 2d Trusts (1959) 427, Section 456, cited by John Deere at 259, which states:
 "Where a transfer of property is made to one person, and another person at the time of the transfer undertakes an obligation to pay the purchase price, a resulting trust arises in the favor of the latter person, unless he manifests an intention that no resulting trust should arise."
The transfer was made to the DeMasis, but the Varies undertook a personal obligation to pay the purchase price. Though the Varies had no legal obligation to the bank to pay the mortgage, they were obliged to the DeMasis.
Particularly instructive is Restatement of the Law 2d Trusts (1959) 431, Section 456, illustration 8, which addresses the following:
 "X is the owner of Blackacre. A purchases Blackacre from X for $10,000, $4,000 to be paid in cash, the balance to be secured by a mortgage on the land. A pays X $4,000 and at A's direction X conveys Blackacre to B who gives X his note for $6,000 secured by a purchase-money mortgage on Blackacre. In the absence of other evidence, B holds Blackacre upon a resulting trust for A, but cannot be compelled to convey to A until A pays off the mortgage."
The situation illustrated by the Restatement is nearly identical to the current situation. We agree with the outcome. The trial court was correct in concluding that Jeffrey was the equitable owner of full title to the property. However, the trial court compelled the DeMasis to transfer the property to Angela when it did not appear that the mortgage had been satisfied. As a result, the DeMasis would still be legally liable for the payment of the mortgage note, but would have no interest in the property. Therefore, appellants first assignment of error has merit. The trial court must fashion a remedy to resolve this situation. It must order that the transfer of the property not occur until after the mortgage has been satisified by Angela or the DeMasis have absolved of any liability on the mortgage note.
For the foregoing reasons, the judgment of the trial court is hereby affirmed in part and reversed and remanded in part.
JUDGE ROBERT A. NADER
FORD, P.J., CHRISTLEY, J. concur.